**IT IS ORDERED as set forth below:**

**Date: March 31, 2020**

_____

**Jeffery W. Cavender**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 18-69488-JWC |
| ELLERY MYRON STEED, | CHAPTER 13 |
| Debtor. | |
| ELLERY STEED, | |
| Plaintiff, | |
| v. | ADVERSARY PROCEEDING |
| EDUCATIONAL CREDIT MANAGEMENT CORPORATION, UNITED STATES DEPARTMENT OF EDUCTION, and DOES 1 and 2, | NO. 19-5219-JWC |
| Defendants. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This case is about a claim objection.  Plaintiff tries mightily to make it more than that, but, at the end of the day, it is little more than a debtor and two creditors disputing whether a claim should be allowed or disallowed.  The question before the Court is whether that dispute should

1

continue in this Court after debtor voluntarily dismissed his Bankruptcy Case.  The Court finds

that it should not.

### I.    BACKGROUND

Debtor Ellery Myron Steed ("Debtor" or "Plaintiff") filed a voluntary petition under

chapter 13 of title 11 of the United States Code (the "Bankruptcy Code"[1]) on November 19, 2018,

Case No. 18-69488 (the "Bankruptcy Case").  On May 6, 2019, Educational Credit Management

Corporation ("ECMC") timely filed proof of claim number 3 (the "Proof of Claim") on behalf of

the US Department of Education ("DOE").  The Proof of Claim asserts a general unsecured claim

in the amount of $10,343.51 for "Federal Student Loan and/or Grant Overpayment."  In item 2 of

the Proof of Claim, ECMC checked the box "no" in response to the question "Has this claim been

acquired from someone else?"  Attached to the Proof of Claim is an "Itemized Statement of

Account" showing, among other things, a principal amount of $2,476.28, interest of $7,780.23,

admin. fees of $87, an interest rate of 9%, and a total of $10,343.51.  Also attached appears to be

a computer screenshot displaying, among other things, the Debtor's name, a debt number, a debt

type of "FIS – FISL Loans," a placement date of 12/01/1983, a balance of $12,181.48, and daily

interest of $0.61.  No other documents or information are attached to the Proof of Claim.

Sixteen days after the Proof of Claim was filed, Debtor commenced this adversary

proceeding on May 22, 2019.  The initial complaint names only ECMC as a defendant and is titled

"Complaint to Determine Existence, Validity and Dischargeability of a Debt Pursuant to 11 U.S.C.

§ 523 and for Damages and Objection to Proof of Claim" (Doc. No. 1) (the "Initial Complaint").

The factual gist of the Initial Complaint is that, while Debtor did receive yearly grants while

attending a university between 1978 and 1981, he never took out any student loans for which he

---

[1] All statutory references herein are to the Bankruptcy Code unless otherwise specified.

had an obligation to repay, and any document asserting a student loan is a forgery. Many of the allegations focus on Debtor's belief that ECMC *must* be an assignee of the alleged debt and not an agent of DOE because a decision from the Northern District of Alabama issued in 1999 detailed the relationship between ECMC and DOE and concluded that ECMC is usually an assignee of student loans. The Initial Complaint alleges that the Proof of Claim is fraudulent because ECMC checked the box "no" in item 2 in response to whether the claim was acquired from someone else, purports to be an agent of DOE instead of an assignee, and failed to attach necessary assignments to the proof of claim. ECMC and DOE dispute that ECMC is an assignee of the alleged debt in this adversary proceeding and maintain that ECMC is merely an agent for DOE, which holds the debt in question. The Initial Complaint further alleges that the Proof of Claim violates Federal Rule of Bankruptcy Procedure 3001 ("Rule 3001") by failing to attach a copy of the purported loan agreement and failing to detail the interest and fees that comprise the purported debt.

The Initial Complaint further includes the following claims:

- Dischargeability – alleges the purported debt, if valid at all, is nonetheless dischargeable under § 523(a)(8) because, among other reasons, ECMC failed to establish that the loan was for an "educational benefit."

- Negligence – alleges ECMC intentionally breached a duty of care in filing the Proof of Claim and is liable for emotional distress and punitive damages.

- Georgia Fair Business Practices Act – alleges ECMC's conduct was in or affecting commerce and has a substantial injurious impact upon consumers generally and in bankruptcy specifically and constitutes an unfair and deceptive act or practice and requests treble damages.

Finally, the Initial Complaint concludes by requesting declaratory relief that (1) the Proof

of Claim violates Bankruptcy Rule 3001(c)(1) and (c)(2), (2) that the debt is dischargeable because it is not for an educational benefit, (3) that the debt is dischargeable because it is not owed and will result in an undue hardship on him, and (4) that the Proof of Claim is subject to sanctions for being filed without any factual support.

Six days later, on May 28, 2019, Debtor filed his "Amended Complaint as of Right to Determine Existence, Validity and Dischargeability of a Debt Pursuant to 11 U.S.C. § 523 and for Damages and Objection to Proof of Claim" (Doc. No. 4) (the "Amended Complaint"). The Amended Complaint adds DOE as well as Does 1 and 2 as defendants. Most of the factual allegations and claims are similar or identical to the Initial Complaint, except that Plaintiff modifies a few paragraphs to discuss DOE's role as assignee and the lack of assignments to DOE attached to the Proof of Claim. The Amended Complaint also adds a claim for civil conspiracy against DOE and ECMC for filing a baseless claim.

DOE filed its Answer to the Amended Complaint on July 2, 2019, and ECMC filed its Answer to the Amended Complaint on July 10, 2019. Both DOE and ECMC generally deny any liability or that the Proof of Claim is invalid or bad. DOE explicitly consents to entry of final orders and judgment by this Court for purposes of objections to the Proof of Claim and dischargeability claims but explicitly does not consent to entry of final orders or judgment by this Court on any other claims asserted in the Amended Complaint.

From there, the adversary proceeding quickly devolved into a morass of motions practice and briefs. Plaintiff obtained entry of default and moved for default judgment against ECMC because ECMC filed its Answer two weeks late. ECMC moved to open the default. All said, the parties filed eight separate motions and/or briefs related to ECMC's default. After a hearing held September 18, 2019, the Court granted ECMC's motion to open its default and denied Plaintiff's

4

motion for default judgment.  *See* Doc. No. 27.  The parties jointly moved for an extension of discovery on October 22, 2019, which the Court granted.   Thereafter, the following motions and responsive briefs were filed:

- ECMC's Motion for Judgment on the Pleadings (Doc. No. 34);

  - Plaintiff's Response (Doc. No. 37);
  - Plaintiff's Amended Response (Doc. No. 39);
  - ECMC's Reply (Doc. No. 43);

- Defendants' Joint Motion to Stay or, in the Alternative, Extend Discovery and Pre-Trial Deadlines (Doc. No. 35);

  - Plaintiff's Response (Doc. No. 36);

- Plaintiff's Motion for Rule 37 Sanctions Striking in Whole or in Part, the Answers/Defenses of DOE and ECMC (Doc. No. 38);

  - Joint Response (Doc. No. 44);
  - Plaintiff's Reply (Doc. No. 45);

- DOE's Motion for Judgment on the Pleadings and Joinder in ECMC's Motion for Judgment on the Pleadings (Doc. No. 40);

  - Plaintiff's Response (Doc. No. 41);
  - DOE's Reply (Doc. No. 46);

- Plaintiff's Motion for Partial Summary Judgment (Doc. No. 42);

  - Joint Response (Doc. No. 52);
  - Plaintiff's Reply (Doc. No. 53);
  - DOE's Motion to File Sur-Reply and Sur-Reply (Doc. No. 54);
    - Plaintiff's Objection (Doc. No. 55).

All but the last four documents listed were filed between November 5 and November 29, 2019, and the last four documents were filed between December 16, 2019 and January 3, 2019.  All the listed motions remain pending.

Meanwhile, on December 5, 2019, Debtor filed a voluntary dismissal of his underlying Bankruptcy Case (Doc. No. 80 in the Bankruptcy Case), and the Court dismissed the Bankruptcy

Case on December 6, 2019 (Doc. No. 81).  DOE and ECMC each filed motions to dismiss or,
alternatively, to abstain from this adversary proceeding as a result of Plaintiff's dismissal of his
Bankruptcy Case.  *See* Doc. Nos. 49 and 50 (the "Motions to Dismiss").  Plaintiff filed a response
on December 16, 2019.  (Doc. No. 51)

## II.    THE PARTIES' POSITIONS

The Motions to Dismiss are straightforward.  They argue that the Eleventh Circuit's
familiar test adopted in *Morris v. Fid. & Deposit Co. of Md. (In re Morris)*, 950 F.2d 1531, 1534
(11th Cir. 1992) weighs in favor of dismissing the adversary proceeding following dismissal of
the underlying Bankruptcy Case.  Alternatively, they argue that discretionary abstention pursuant
to 28 U.S.C. § 1334(c)(1) weighs in favor of dismissing the adversary proceeding.

Plaintiff's response is far more complicated and eschews any discussion of *Morris* except
to argue that it is not applicable.  Plaintiff also completely ignores any discussion of abstention
under 28 U.S.C. § 1334(c)(1).  Instead, Plaintiff puts all his eggs in one basket—that the Court has
no discretion to dismiss this adversary proceeding.  As discussed below, Plaintiff chose the wrong
basket.

## III.    ANALYSIS

### A.  The Claims at Issue

Before turning to the parties' specific arguments, the Court finds it helpful to list each claim
at issue and determine the nature of the Court's jurisdiction over each at the time the adversary
proceeding was filed.  That analysis will aid in the determination of whether jurisdiction remains
following dismissal of the Bankruptcy Case and whether, if jurisdiction still exists,[2] the Court

---

[2] Although "[t]he presence or absence of jurisdiction must be evaluated based on the state of affairs existing at the
time the adversary complaint was filed ... not at some later time," *see Great Am. Cap. Corp. v. Oxley Dev. Co., LLC
(In re Oxley Dev. Co., LLC)*, 493 B.R. 275, 285 (Bankr. N.D. Ga. 2013) (citing *Cont'l Nat. Bank of Miami v.
Sanchez (In re Toledo)*, 170 F.3d 1340, 1345 (11th Cir.1999)), mootness is an exception to this general rule.  *See,
infra*, sec. III.B.

should retain that jurisdiction.  In the Court's view, Plaintiff asserts six distinct claims:

1.  Objection to the Proof of Claim based on the merits of the claim itself, *i.e.*, that no debt exists;

2.  Claims for violations of Rule 3001 and other deficiencies in the form of the Proof of Claim;

3.  Dischargeability of the debt;

4.  Negligence;

5.  Violation of Georgia Fair Business Practices Act; and

6.  Civil Conspiracy.[3]

Whether this Court had jurisdiction over each claim at the time of filing the adversary proceeding is determined by 28 U.S.C. § 1334, which vests federal district courts with exclusive jurisdiction over cases filed under title 11 and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 157 then allows district courts to refer such cases and proceedings to bankruptcy courts, which the district court has done in this district.  Realizing it is an oversimplification, 28 U.S.C. § 157 divides proceedings into core and non-core proceedings, with proceedings arising under title 11 and arising in a case under title 11 being "core proceedings" and proceedings related to cases under title 11 being "non-core."

This adversary proceeding certainly asserted core claims at the time it was filed—claim objections and dischargeability actions are undoubtedly core.  28 U.S.C. § 157(b)(2)(B) and (I).  With respect to claims 1 and 3, the Court further concludes that those claims "arise under title 11."

---

[3] Plaintiff also alleges violations of the Fair Debt Collection Practices Act in his Motion for Partial Summary Judgment (Doc. No. 42), though that claim does not appear in the Complaint.  To the extent the claim is validly asserted in this action, the Court's analysis relative to the state law claims listed at 4, 5, and 6 above equally applies to the FDCPA claim.

No one disputes that those claims are core and that this Court has authority to enter final judgments and orders on those claims. Indeed, DOE expressly consented to this Court's authority to enter final judgment and orders with respect to the claim objection and dischargeability issues.

With respect to claim 2, the alleged violations of Rule 3001 and other deficiencies with the Proof of Claim (collectively, the "Rule 3001 Claims"), the Court finds it had jurisdiction over such claim as ones "arising in" a case under title 11. Any claim or right to relief under Rule 3001 or deficiencies in forms does not arise under title 11 specifically, as the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") are not title 11. Instead, the Federal Rules of Bankruptcy Procedure are authorized by 28 U.S.C. § 2075, which gives the Supreme Court "the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11." The statute further provides that "[s]uch rules shall not abridge, enlarge or modify any substantive right." *Id.* To the extent Plaintiff relies on various Bankruptcy Rules to argue that he has asserted rights arising under title 11, which he argues extensively in his response, the Court disagrees.[4] Plaintiff's Rule 3001 Claims, however, arise in a case under title 11 as they would have no existence outside of a bankruptcy case. Thus, the Rule 3001 Claims constitute a core proceeding.

Finally, claims 4, 5, and 6 are a little more difficult to pin down precisely as core or non-core because they arguably have attributes of both. On the one hand, they certainly do not arise under title 11 or the Bankruptcy Rules and are based entirely on state (or non-bankruptcy) law. On the other hand, the factual underpinnings of the claims are premised entirely on Plaintiff's Rule 3001 Claims. In that way, it could be argued that the claims would have no existence outside of

---

[4] In addition to his 3001 Claims, Plaintiff argues that his alleged "rights" under Bankruptcy Rules 4007 and 7001 to file dischargeability actions and declaratory judgment actions create an independent basis to conclude this adversary proceeding is core. The Court rejects any attempt by Plaintiff to bootstrap an independent basis for jurisdiction from purely procedural rules that create no substantive rights.

the Bankruptcy Case and therefore arise in a case under title 11.  Defendants assert that claims 4, 5, and 6 are non-core because they are based on state law.  Further, Defendants point out that Plaintiff conceded the claims are non-core and that this Court does not have authority to enter final judgment and orders on such claims.  *See* Plaintiff's Motion for Partial Summary Judgment (Doc. No. 42).  Plaintiff, however, appears to reverse course for purposes of the Motions to Dismiss and cites to case law supporting the proposition that even a state law claim can be core if it is premised on a core claim.  *See Burns v. LTD Acquisitions, LLC (In re Burns)*, Bankr. No. 08-34079, Adv. No. 09-3449, 2010 WL 642312 (Bankr. S.D. Tex. Feb. 18, 2010).  At most, the claims might arise in a case under title 11, but at a minimum, the claims are related to a case under title 11.  Ultimately, the determination between core and non-core is not paramount to the Court's decision of whether to retain these claims.  As discussed below, the Court will not retain jurisdiction over the Rule 3001 Claims.  Because claims 4, 5, and 6 are completely derivative of that claim and are based on non-bankruptcy law, the Court likewise will not retain jurisdiction over the related state law claims.

### B.  The Dischargeability Claim Is Moot

Before turning to *Morris* and abstention, the Court first addresses the threshold issue of mootness.  While there are different brands of mootness that may arise in bankruptcy cases,[5] at issue here is the axiomatic constitutional doctrine "that a federal action must present a real case or controversy under Article III of the Constitution."  *Gagliardi v. TJCV Land Trust*, 889 F.3d 728, 733 (11th Cir. 2018).  "In order for there to be a real case or controversy, … the issues in play at the outset must remain alive.  Mootness doctrine ensures that a *justiciable* case or controversy is

---

[5] *See, e.g., Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 33 (9th Cir. B.A.P 2008) ("In bankruptcy, mootness comes in a variety of flavors: constitutional, equitable, and statutory" and discussing the differences).

present 'at all stages of review.'"  *Gagliardi v. TJCV Land Trust*, 889 F.3d 728, 733 (11th Cir.

2018) (emphasis added) (citations omitted).  "Thus, a case that was once cognizable under Article

III becomes moot when 'an intervening circumstance deprives the plaintiff of a personal stake in

the outcome of the lawsuit.'"  *Id.* (citations omitted).  "Mootness demands that there be something

about the case that remains alive, present, real, and immediate so that a federal court can provide

redress in some palpable way."  *Id.*

Defendants argue that Plaintiff mooted his dischargeability claim by voluntarily dismissing

his underlying Bankruptcy Case prior to discharge, citing *U.S. v. Moseley (In re Moseley)*, 161

B.R. 382 (1992) and *Southeastern Bank v. Crews (In re Crews)*, Adv. No. 94-05026A, 1994 WL

16005340, at *1 (Bankr. S.D. Ga. Nov. 22, 1994).  Both decisions conclude that dismissal of an

underlying bankruptcy case moots nondischargeability actions.  The Court agrees and does not

find the question close.  As stated in *Moseley*:

> Due to the dismissal of Debtors' underlying case, there is no longer any
> discharge from which a debt can be excepted nor is there a discharge to be
> denied.  The Court can understand both creditors' desires to proceed with an
> adjudication of these issues at this point, but the Court is aware of no
> authority which would make such an adjudication appropriate.  It is simply
> not a justiciable issue unless there is a discharge to deny or a discharge from
> which to be excepted.

*Moseley,* 161 B.R. at 384.  The Court agrees with this reasoning.  Because there will be no

discharge, any ruling that the debt is dischargeable would be a purely hypothetical endeavor, and

the justiciability of Plaintiff's dischargeability claim died the moment Plaintiff dismissed the

Bankruptcy Case without a discharge.

Debtor argues that *Moseley* was incorrectly decided because mootness does not apply

unless specifically required under § 349.  Because dischargeability is not an issue specifically

referenced in § 349, the argument goes, there can be no mootness of a dischargeability claim.

Debtor cites no authority supporting this proposition,[6] but asks what statute *Moseley* and Defendants can point to supporting the position that dischargeability actions become moot upon case dismissal.  The answer, of course, is the Constitution.

Debtor emphatically asks (and answers) the following question in his brief:  "what if, before the underlying bankruptcy case had been dismissed, the debtor obtained a judgment in the adversary proceeding that the debt was dischargeable? Would the judgment be subject to vacation or undoing under Section 349 if the underlying bankruptcy case is subsequently dismissed? Obviously not."  Response, p. 18.   The question and answer oversimplify the issue and highlight why the facts of this adversary proceeding render the dischargeability claim moot.  The real question in that circumstance would not be whether the order should be vacated but whether it has any preclusive effect in a hypothetical future bankruptcy in which a discharge did enter.  Whatever that answer should be, there is no doubt that the order would serve no purpose unless and until another case is filed and a discharge entered.  While it is arguable whether a court should determine

---

[6] Plaintiff cites to *Davis v. Courington (In re Davis)*, 177 B.R. 907, 911 (9th Cir. B.A.P. 1997), which stands for the proposition that dismissal of a bankruptcy proceeding does not moot a claim under § 362(k).  In doing so, the *Davis* court notes that nothing under § 349 moots such claims.  Fair enough, but mootness does not begin and end with § 349—which is not itself a jurisdictional statute.  Nothing in § 349 or any case cited by Plaintiff stands for the proposition that § 349 is the only manner by which claims in a bankruptcy case become moot, and courts must still determine whether a live controversy exists following dismissal of a bankruptcy case regardless of whether § 349 specifically moots the claim at issue.

Further, Plaintiff's citation to *Blackwell v. Rio Mgmt., Inc. (In re Blackwell)*, 267 B.R. 732 (Bankr. W.D. Tex. 2001) is curious on several levels.  The case has nothing to do with post-dismissal jurisdiction, mootness, dischargeability actions, or any of the claims at issue in this adversary proceeding.  While the case cites to dischargeability actions as an example of claims that might fall under "arising under" jurisdiction but that might not also be included in the category of "related to" jurisdiction, what that general proposition has to do with this adversary proceeding or whether dischargeability actions are moot following dismissal escapes the Court.  Further, the *Blackwell* decision concluded that the doctrine of ripeness prevents a bankruptcy court from asserting jurisdiction over claims asserted under § 304 in an adversary complaint where no petition had been filed.  "If we were to conclude that a *complaint* properly 'commenced a case' under title 11, a party could simply file a complaint against another party in a bankruptcy court without either party first filing a petition for bankruptcy relief—making a shambles of jurisdiction analysis."  *Id.* at 738.  If anything, *Blackwell* militates against Plaintiff's position because determination of dischargeability would be relevant only if Plaintiff were to file another bankruptcy case, but such claim remains unripe until, at a minimum, another case is actually filed.  At that point, Plaintiff might be in a position to file another dischargeability action.

discharge issues before entry of a discharge in a pending case in which a discharge remains possible,[7] the Court finds it is not debatable that it should not make such a determination in a case in which no discharge is in prospect.  Federal courts are "not in the business of issuing advisory opinions that do not 'affect the rights of litigants in the case before' [it] or that merely opine on 'what the law would be upon a hypothetical state of facts.'"  *Gagliardi* at 733.  The Court does not find that this adversary proceeding presents a justiciable dischargeability issue because some other set of facts that do not exist might present a justiciable issue at some point in the future.

Plaintiff's bid to invoke Rules 4007 and 7001 to challenge mootness also proves unavailing.  Rule 4007 is a procedural rule governing when nondischargeability actions may be filed.  It has nothing to do with whether a justiciable issue of dischargeability exists in the first place.  Rule 7001 allows declaratory judgment actions on dischargeability issues, but "[t]he mootness problem remains the same.  An otherwise nonjusticiable case cannot be resurrected simply by seeking declaratory relief."  *Gagliardi* at 735.  The Court does "not have the power to 'advise' potential parties about the lawfulness of potential actions that have not and may never occur."  *Id.*  The Court concludes that Plaintiff's dischargeability claim became moot upon dismissal of the Bankruptcy Case without a discharge.

Defendants do not assert that any other claims are moot, and because the Court will not retain jurisdiction over those claims, it need not resolve what it views as a thorny issue with respect to the remaining claims.

---

[7] In other pleadings, the parties dispute whether the dischargeability claims at issue here were ripe for adjudication when filed because a discharge likely would not enter until several years into the future, if ever.  The Court need not answer that question because dismissal of the bankruptcy case removed all doubt that there will not be a discharge in the Bankruptcy Case.

## C.  The Court Has Discretion Not to Retain Jurisdiction

Plaintiff argues that the Court has no discretion regarding retention of jurisdiction over the remaining claims because they were core at the time he filed this adversary proceeding and were not specifically mooted by § 349.  In doing so, Plaintiff ignores the only statute that creates bankruptcy jurisdiction in the first place:  28 U.S.C. § 1334.  That statute, which is the clearest Congressional mandate when it comes to bankruptcy jurisdiction, explicitly provides that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."  28 U.S.C. § 1334(c)(1).[8]

The Court does not suggest that discretionary abstention is to be used lightly or that it is always appropriate following dismissal of a bankruptcy case.  Nor does the Court suggest that abstention under 28 U.S.C. § 1334(c) is the only reason a bankruptcy court may dismiss a proceeding following dismissal of the underlying bankruptcy case.  The point is that Congress very clearly, in the statute creating bankruptcy jurisdiction, gives district courts (and by virtue of referral under 28 U.S.C. § 157, bankruptcy courts) discretion to abstain in almost any bankruptcy proceeding, including core proceedings.

None of the cases cited by Plaintiff vitiate this clear Congressional intention to give discretion to courts in the exercise of bankruptcy jurisdiction, and none support the argument that core claims must always be retained following case dismissal.  The closest any case comes is *In re Healthcare Real Estate Ptr's., LLC v. Summit Healthcare Reit, Inc. (In re Healthcare Real*

---

[8] There are only two exceptions to discretionary abstention under (c)(1).  The first involves chapter 15 cases, and the second is found in subsection (d) of the statute, which provides that "[s]ubsection (c) and this subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy."  *Id.* at (d).  Neither exception applies to this proceeding, which arises from a chapter 13 case and does not involve the application, or any alleged violations of, the automatic stay.

*Estate Ptr's., LLC* ), 941 F.3d 64 (3d. Cir. 2019), but it is easily distinguishable.  In that case, the

Third Circuit ruled that the bankruptcy court had no discretion to dismiss a claim under § 362(k)

for willful violation of the automatic stay after the dismissal of the underlying involuntary

bankruptcy case.  The basis of the ruling is that "§ 362(k) actions are separate and apart from the

related bankruptcy cases in which they arise and thus stand on their own."  *Id.* at 69.  As

independent actions, the court further found that § 362(k) actions are not merely core proceedings

but are "cases under title 11."  By elevating § 362(k) claims to independent cases under title 11,

the Third Circuit cloaked such claims in an additional layer of jurisdictional imperative:

> Of course, *our conclusion that § 362(k) creates a private cause of action leads us to conclude* that the bankruptcy court and the District Court erred in holding the bankruptcy court had the authority to limit what claims Healthcare could bring in the bankruptcy court after the dismissal of the bankruptcy petition. As a rule, federal courts must hear matters within their jurisdiction. Sprint Commc'ns v. Jacobs, 571 U.S. 69, 77, 134 S.Ct. 584, 590-91, 187 L.Ed.2d 505 (2013). That rule applies to bankruptcy courts. Congress authorized bankruptcy courts to exercise jurisdiction based on referral from the district court. See 28 U.S.C. § 157(a). ''When a case is referred under § 157(a), Congress surely intends that all jurisdiction otherwise vested in the district courts be exercised by the bankruptcy judges,'' unless § 157 expressly provides otherwise. William L. Norton III, 1 Norton Bankr. L. & Prac. § 4:36 (3d ed. 2019); cf. Stern v. Marshall, 564 U.S. 462, 480, 131 S.Ct. 2594, 2607, 180 L.Ed.2d 475 (2011) (''Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court. That allocation does not implicate questions of subject matter jurisdiction.'' (citation omitted)). Hence, ''[w]here a bankruptcy court has jurisdiction but is not in a position to avail itself of statutory or nonstatutory abstention, it must exercise its jurisdiction,'' In re Johnson, 346 B.R. 190, 194 (9th Cir. BAP 2006).

*Id.* at 71 (emphasis added).  There is a lot to unpack in that paragraph, but the lead-in makes clear

that the independent nature of a § 362(k) claim is essential to the holding, and the final sentence

of the paragraph betrays a key distinction between a "case under title 11" and core proceedings.

As discussed above, 28 U.S.C. § 1334(c)(1) allows bankruptcy courts to avail themselves of

statutory abstention when it comes to nearly any proceeding in a bankruptcy case, even core

proceedings.[9]  Therefore, even if *In re Healthcare Real Estate* were binding on this Court, it would

not apply in this adversary proceeding that asserts no claims under § 362(k).  The Court discerns

nothing in the Plaintiff's claims in this adversary proceeding that would elevate them to the

exceptional status given to § 362(k) by the Third Circuit.  Claim objections serve no independent

purpose beyond allowance or disallowance for purpose of distribution and discharge, neither of

which will occur in Plaintiff's dismissed Bankruptcy Case, and claims for relief under Bankruptcy

Rule 3001 and related state law claims cannot be cases under title 11 since they are not a creation

of title 11.

Other cases cited by Plaintiff likewise are distinguishable because they deal with § 362(k)

claims.  *See Johnson v. Smith (In re Smith)*, 575 F.3d 1079, 1083 (10th Cir. 2009) ("It is particularly

appropriate for bankruptcy courts to maintain jurisdiction over § 362(k)(1) proceedings because

their purpose is not negated by dismissal of the underlying bankruptcy case."); *Davis v. Courington

(In re Davis)*, 177 B.R. 907, 911 (9th Cir. B.A.P. 1997) ("Imposition of damages for willful

violation of the automatic stay serves an important purpose even after the underlying bankruptcy

case has been dismissed.").  Moreover, neither *Johnson* nor *Davis* stand for the proposition that a

bankruptcy court has no discretion to decline the exercise of jurisdiction over a § 362(k) claim.

Indeed, *Davis* explicitly holds that such claims are subject to discretionary abstention and remands

the case to the bankruptcy court to make such a determination.  *In re Davis,* 177 B.R. at 913.

None of the other cases cited by Plaintiff support the position that the Court must retain

---

[9] Again, the Court does not imply that abstention should be used frequently, only that it is available in nearly all core proceedings.  Notably, one of the few types of core proceedings in which discretionary abstention is not available is "the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy."  While this language may not explicitly apply to § 362(k) claims, and *In re Healthcare Real Estate* does not rely on this exception, the fact that issues related to the automatic stay are excepted from discretionary abstention strengthens the distinction between claims under § 362(k) and other core proceedings.  Indeed, the Court is retaining jurisdiction in two separate adversary proceedings filed by Plaintiff in which he asserts claims under § 362(k) for willful violations of the automatic stay.

jurisdiction over all core proceedings.  In fact, *Gagel v. Kingston Green Ptr.'s LTD (In re GWF, Inv. LTD*, 85 B.R. 771 (Bankr. S.D. Ohio 1988), relied upon by Plaintiff, suggests the opposite.  In *GWF*, the court grappled with a bankruptcy court's continuing jurisdiction over two non-core "related to" adversary proceedings following case dismissal.  The court first noted that "[a]s a general rule jurisdiction over bankruptcy proceedings ceases with the closing of a bankruptcy estate," *id.* at 779, with no qualifier that the general rule applies only to non-core proceedings.  The Court then noted that exceptions exist for proceedings arising under title 11, stating the following:

> this court finds a clear congressional intent that bankruptcy jurisdiction continues for the purpose of deciding proceedings "arising under" title 11, despite the closing of the bankruptcy case. (*Congressional intent with respect to proceedings "arising in" title 11 cases is less certain.*) But this court discerns no Congressional intent that bankruptcy jurisdiction should continue for matters *not involving the enforcement of rights created by title 11*, but that are merely "related to" cases under title 11. There is "congressional intent that bankruptcy jurisdiction should continue for matters [] involving enforcement of rights created by title 11."

*Id.* at 780.  The ruling indeed supports the notion that bankruptcy courts continue to have and may retain jurisdiction over proceedings arising under title 11.  That holding is unremarkable.  No one questions that bankruptcy courts may exercise jurisdiction over such claims following case dismissal.  But the holding in no way suggests that the general rule that adversary proceedings are dismissed following case dismissal does not apply to core proceedings or that courts <u>must</u> exercise jurisdiction over all core claims following dismissal.[10]  Further, the court expressed doubt that Congress intended jurisdiction to continue in proceedings arising in cases under title 11.  This distinction, if binding, would be important here because Plaintiff's Rule 3001 Claims and the

---

[10] In his response, Plaintiff uses the above-quoted language from *In re GWF* to craft a sentence stating *In re GWF* "noted the mandated statutory jurisdiction where there is '[c]ongressional intent that bankruptcy jurisdiction should continue for matters [ ] involving the enforcement of rights created by title 11.'"  The sentence quoted from *In re GWF* actually reads "[b]ut this court discerns no Congressional intent that bankruptcy jurisdiction should continue for matters not involving the enforcement of rights created by title 11."  Plaintiff's cavalier use of brackets to omit language from the quoted sentence is disingenuous and misleading.

related state law claims are each, at best, proceedings arising in a title 11 case, not claims arising under title 11 itself.  Thus, *GWF* does not support Plaintiff's argument and could be read to support the proposition that following case dismissal no jurisdiction exists <u>at all</u> over "arising in" proceedings such as Plaintiff's 3001 Claim and related state law claims.  Of course, the Eleventh Circuit has already rejected this position and held that bankruptcy courts are not automatically divested of jurisdiction even over non-core claims.

Plaintiff also cites *Honigman, Miller Schwartz and Cohn, L.L.P. v. Adell (In re John Richards Homes Bldg. Co.),* 405 B.R. 192 (E.D. Mich. 2009) for the following statement:  "there is much support for the proposition that bankruptcy courts retain jurisdiction over core proceedings beyond the dismissal or closure of the underlying bankruptcy case."  Again, this statement offers nothing new or remarkable in light of *Morris* and numerous other cases.  *Honigman,* in which the district court was addressing an argument that a bankruptcy court had no jurisdiction to award post-judgment attorney fees under § 303(i), does not stand for Plaintiff's proposition that a bankruptcy court must exercise jurisdiction over all core proceedings after dismissal of a bankruptcy case.  Nor does *Honigman* involve claims similar to the claims here.  *Honigman* ruled that a bankruptcy court had jurisdiction to award post-judgment attorney's fees under § 303(i) after dismissal of an involuntary petition and judgment awarding damages to the debtor.  Section 303(i) specifically provides that, following dismissal of an involuntary petition, the court may grant judgment in favor of a debtor and against a petitioner for costs or reasonable attorney's fees or, in the case of a bad faith petition, for damages caused by the petition.  11 U.S.C. § 303(i).  It makes sense that a bankruptcy court would retain jurisdiction over a § 303(i) claim because that section necessarily requires post-dismissal jurisdiction.  Claim objections and alleged Rule 3001

violations, on the contrary, contain no provisions that necessarily require an exercise of post-dismissal jurisdiction.

Plaintiff also cites *Un-Common Carrier Corp. v. Oglesby*, 98 B.R. 751 (S.D. Miss. 1989), which itself found no continuing jurisdiction over a non-core adversary proceeding following case dismissal. This case does not help Plaintiff's argument.

In sum, Plaintiff fails to cite a single case, statute, or authority that stands for the proposition that a bankruptcy court must exercise jurisdiction over core proceedings following dismissal of the underlying bankruptcy case. Further, none of the cases cited in support of Plaintiff's position involve claims similar to the claims at issue here. The Court therefore rejects any argument that this Court has no discretion to decline exercising its jurisdiction over the claims in this adversary proceeding. At a minimum, the Court must address Defendants' arguments regarding abstention, to which Plaintiff wholly failed to respond. The Court will do so below after its discussion of *Morris*.

### D.  Application of *Morris*

The Court next turns to Defendants' argument that the *Morris* factors weigh in favor of dismissal. Defendants' position is a straightforward argument that dismissal of the Bankruptcy Case triggers the general rule that "retaining jurisdiction over an adversary complaint when the underlying bankruptcy case has been dismissed is the exception not the rule." *In re Gustafson*, 316 B.R. 753, 758 (Bankr. S.D. Ga. 2004). They then argue that dismissal is appropriate pursuant to the familiar Eleventh Circuit test set forth in *Morris v. Fid. & Deposit Co. of Md. (In re Morris)*, 950 F.2d 1531, 1534 (11th Cir. 1992), which holds that

> the dismissal of an underlying bankruptcy case does not automatically strip a federal court of jurisdiction over an adversary proceeding which was related to the bankruptcy case at the time of its commencement. The decision whether to retain jurisdiction over the adversary proceeding should

> be left to the sound discretion of the bankruptcy court or the district court,
> depending upon where the adversary proceeding is pending.

950 F.2d 1531, 1534 (11th Cir. 1992). The *Morris* decision adopts a three-part test "in determining

whether jurisdiction should be retained: (1) judicial economy; (2) fairness and convenience to the

litigants; and (3) the degree of difficulty of the related legal issues involved. *Id.* Defendants argue

that the *Morris* factors weigh in favor of dismissing the entire adversary proceeding.

Before turning to an application of the *Morris* test, the Court will address a few of

Plaintiff's arguments as they relate specifically to *Morris*. Plaintiff appears to argue that Morris

is applicable only in non-core "related to" proceedings. The position may have some merit to the

extent *Morris* may not be directly <u>binding</u> in core proceedings, but Plaintiff goes much too far by

conflating the concept of continuing jurisdiction following case dismissal with an absolute

requirement to exercise such jurisdiction.

First, it is arguable whether *Morris* applies only to non-core proceedings or whether it

applies to core proceedings as well. The issue in Morris was whether a bankruptcy court had

jurisdiction over an adversary proceeding following dismissal of the underlying chapter 11

bankruptcy case. *Morris* 950 F.2d at 1532. Whether the underlying adversary proceeding was

core or non-core is not entirely clear from the decision itself. The majority opinion does not focus

on, or even discuss, the distinction between core and non-core claims. Indeed, the decision does

not even cite to 28 U.S.C. § 1334. Certain language in the opinion strongly suggests that the

adversary proceeding at issue was non-core by describing the adversary proceeding as one "related

to a bankruptcy case." *See Id.* at 1533-34. It is not crystal clear, however, that the Eleventh Circuit

was using "related to" in the jurisdictional sense (*i.e.*, to the exclusion of core claims) or in a more

general sense. The court used no qualifier at all when stating "dismissal of the bankruptcy case

usually results in dismissal of all remaining adversary proceedings. . . ," *id.* at 1535, and it throws

in a reference to "arising in" cases when citing to cases supporting its ruling. The limited discussion of the claims at issue in the adversary proceeding support a conclusion that they were purely state law claims, *id.* at 1533, but the dissent notes that the district court had previously found the proceeding to be core, though the dissent disagreed with that position. *Id.* at 1536 (J. Clark) (dissenting). On the whole, it appears safe to conclude that the Eleventh Circuit viewed the underlying adversary proceeding in *Morris* as a non-core proceeding. In the strictest sense, then, it might be said that the specific holding of *Morris* is binding only for non-core proceedings.

But the Court does not view the principles applied in *Morris* to be confined only to non-core proceedings, and nothing in Morris supports the proposition that a bankruptcy court <u>must</u> exercise jurisdiction over every core proceeding following dismissal of the underlying bankruptcy case. The core (pun intended) holding of *Morris* is that dismissal of a bankruptcy case does not automatically strip the bankruptcy court of jurisdiction over non-core proceedings when jurisdiction existed at the time the proceeding commenced. That is the issue cases cited in *Morris* were grappling with. *See, e.g., In re GWF*, 85 B.R. 771. That is why cases in which courts were trying to decide if bankruptcy court jurisdiction continued in non-core proceedings at all sometimes used language relied upon by Plaintiff that "clear congressional intent that bankruptcy jurisdiction continues for the purpose of deciding proceedings 'arising under' title 11, despite the closing of the bankruptcy case." *GFW* at 780. Such language was used as a contrast to highlight the issue before them—jurisdiction <u>can</u> continue in core proceedings, but <u>can</u> it continue in non-core proceedings? The fact that many courts, including the Eleventh Circuit, have concluded that jurisdiction <u>can</u> continue in both core and non-core proceedings does not mean that it <u>must</u> be exercised in core proceedings, and the Court has yet to see a case that makes such a statement.

Plaintiff argues that "no one would seriously propose that the Eleventh Circuit in *In re*

*Morris* was advocating a bankruptcy court's discretionary prerogative to effectively shut down title 11 jurisdiction *wholesale* simply because the chapter 13 case was dismissed. That would be preposterous and indeed the contrary is true." But that is much closer to what the actual statutes and case law say than Plaintiff's proposed alternative, which is far more preposterous than giving courts discretion to determine whether jurisdiction is appropriately exercised after the entire basis for jurisdiction existing in the first place vanishes.

Plaintiff's apparent view of bankruptcy jurisdiction is that dismissal of an underlying bankruptcy case has, essentially, no effect on any pending core matters outside of the limited scope of § 349. That position leads to a panoply of absurdities, one of which is highlighted by this adversary proceeding. Under Plaintiff's theory, a chapter 13 debtor could file a petition, immediately file a dischargeability action, and then immediately file a voluntary dismissal, all within a couple of minutes. Plaintiff's theory would always require such an action to continue in the bankruptcy court because the dischargeability action was core at the time it was filed. And it might not be limited to dischargeability actions. Debtors might seek to reject executory contracts, modify liens, obtain financing under § 364 with priming liens. Any right arising under the Bankruptcy Code would be fair game. The possibilities would be endless. Heck, why not confirm plans following dismissal? Plan confirmation is a core proceeding, after all, and nothing in § 349 specifically vitiates plan confirmation. Perhaps the Court exaggerates, perhaps not.[11]

Unfortunately for Plaintiff, judicial discretion permeates the Bankruptcy Code and its related statutes and Rules, including relief under Bankruptcy Rule 3001. *Morris*, and countless other cases, confirm that bankruptcy jurisdiction does not automatically end when a case is

---

[11] Perhaps mootness prevents many of the absurdities suggested by the Court, but perhaps not. Claim objections based on state law, like the claims at issue here, are examples of cases that lose any bankruptcy purpose following case dismissal but which do not necessarily become constitutionally moot by case dismissal.

dismissed.  This is not controversial.  But those same cases, the structure of 28 U.S.C. § 1334, and

the Bankruptcy Code itself repeatedly confirm that courts, exercising discretion, serve a gate-

keeping function to ensure that bankruptcy jurisdiction serves its intended purpose following

dismissal of a bankruptcy case.  This is especially true when, as here, the Debtor voluntarily

dismissed his chapter 13 Bankruptcy Case because he found it inconvenient to continue its

prosecution.   Thus, the Court finds that the principles applied in *Morris* apply to this adversary

proceeding.

With that, the Court finally turns to the framework adopted in *Morris* to analyze whether

to exercise jurisdiction over Plaintiff's remaining claims.

    1.  <u>Judicial Economy</u>

Nothing about this adversary proceeding is economical.  What should have been a simple

objection to a proof of claim quickly morphed into a hydra of state law claims, requests for punitive

damages, motions, and discovery disputes.  "The fundamental purpose of the claims allowance

process and the various rules for filing of proofs of claim and allocating burdens of proof is to

provide a fair and inexpensive procedure for the proper determination of claims on the merits."  *In

re Shank*, 315 B.R. 799, 814 (Bankr. N.D. Ga. 2004).  Nothing about this adversary proceeding

honors that purpose.  Plaintiff filed this adversary proceeding 16 days after Defendants filed the

Proof of Claim.  There is no indication in the record or the Court's dealing with this adversary

proceeding that indicates Plaintiff ever made any attempt to resolve his objections to the Proof of

Claim before filing an adversary proceeding asserting at least four separate state law claims for

damages and seeking damages for emotional distress and punitive damages.  To be fair,

Defendants have not helped themselves by missing an answer deadline (by two weeks) and

apparently missing discovery deadlines, but Plaintiff's tactics in this adversary proceeding and

others before this Court show that his intention in filing this adversary proceeding is not to utilize "a fair and inexpensive procedure for the proper determination of claims on the merits," but rather to wield that procedure as a bludgeon against his creditors.

Further, this adversary proceeding is not similar to cases like *Morris* where the adversary proceeding had been pending for years and was on the eve of trial when the underlying Bankruptcy Case was dismissed. Instead, this adversary proceeding was pending for a little over 6 months at the time Debtor dismissed his Bankruptcy Case, and the only substantive matter ruled on by the Court at that time and to date are the motion for default judgment against ECMC and ECMC's related motion to open default. It is true that numerous partially dispositive motions remain pending, including Plaintiff's motion for summary judgment and motion for sanctions and Defendants' motions for judgment on the pleadings, but the Court has reviewed each of those pleadings, and, suffice it to say, this adversary proceeding is nowhere close to a resolution or trial. Plaintiff's motion for summary judgment leaves many factual questions for trial, including all issues related to damages. Defendants' motions for judgment on the pleadings address only some claims at issue and raise threshold jurisdictional issues. Discovery disputes remain outstanding, and it seems apparent that significant further discovery may be necessary.[12] Further, Defendants assert that Plaintiff's state law claims are not core (which Plaintiff has acknowledged in one pleading but denied in another) and have not consented to entry of final judgment by this Court on those claims. It is apparent to the Court that these state law claims are likely to create the most legal and factual issues in this adversary proceeding going forward. Further, the claim objection

---

[12] Defendants sought an extension of discovery pending resolution of their motion for judgment on the pleadings. Plaintiff has sought sanctions and summary judgment based on Defendants' failure to respond to discovery appropriately. While the Court has not ruled on these pending matters, it has reviewed these pleadings and determined that the sweeping sanctions sought by Plaintiff likely would not be appropriate at this juncture (Plaintiff filed no motion to compel but skipped straight to case-dispositive sanctions), and discovery would likely continue in this adversary proceeding if not dismissed.

itself is no longer a bankruptcy matter as there is no estate against which a claim may be allowed

or disallowed.  To the extent Plaintiff asserts no debt is owed, that is now purely a state law dispute

between a debtor and a creditor.  As to Rule 3001 sanctions, it is a procedural rule designed

primarily to aid in the efficient resolution of claims in the Bankruptcy Code's unique system of

shifting burdens for claims allowance.  *See* 11 U.S.C. § 502 (providing for deemed allowance of

filed claims); Rule 3001(f) ("proof of claim executed and filed in accordance with these rules shall

constitute prima facie evidence of the validity and amount of the claim.").  It is not a mechanism

to afford debtors an independent cause of action for violations of the Rule and official forms.  *See*

*Thomas v. Midland Funding, LLC (In re Thomas)*, 592 B.R. 99, 111-12 (Bankr. W.D. Va. 2018).[13]

Nor is it, in and of itself, a basis to deny a claim.  11 U.S.C. § 502(b) (listing bases to deny claims—

form of proof of claim not included).  With no further claim against an estate to be allowed or

disallowed, the Court sees little gain in expending its resources to determine whether sanctions are

appropriate under a Rule that Debtor rendered mostly irrelevant by dismissing his Bankruptcy

Case.[14]

---

[13] As *In re Thomas* so aptly put it:

> The Court therefore may exercise its discretion in determining whether to impose the
> sanctions provided for by the Rule. The discretionary nature of the imposition of such
> sanctions comports with the reality that the relief exists solely by force of a rule of
> procedure. The Federal Rules of Bankruptcy Procedure are designed and maintained to
> aid in the just and efficient resolution of matters pending before the Court. *Cf.* Fed. R.
> Civ. P. 1 (mandating that the Federal Rules of Civil Procedure "should be construed,
> administered, and employed by the court and the parties to secure the just, speedy, and
> inexpensive determination of every action and proceeding"). Although the Rules of
> Procedure may permit sanctions or other penalties as a part of enforcement, the Rules of
> Procedure do not allow for a private cause of action for damages from violating a rule of
> procedure (in other words, as noted by Midland, there is no private cause of action to
> seek damages for a violation of Rule 3001). Instead Rule 3001 gives the Court authority
> to patrol the parties before it to achieve the efficient, speedy, and just resolution of
> adversarial and contested matters.

[14] Moreover, it does not appear to the Court that any meaningful sanctions under Rule 3001 would be merited even
though Defendants violated Rule 3001 by failing to attach a copy of the loan documents at issue.  The sanctions
available under Rule 3001 "are permissive and not mandatory. . . .  The Court therefore may exercise its discretion
in determining whether to impose the sanctions provided for by the Rule."  *Thomas v. Midland Funding, LLC (In re*

The Court finds judicial economy will be best served by declining to exercise jurisdiction in this adversary proceeding. Plaintiff may pursue his claims on the underlying debt and his state law claims for damages in a court that clearly has authority to render final judgment on such claims.

### 2. Fairness and Convenience to the Litigants

The Court finds this factor weighs in favor of declining jurisdiction. Dismissal mooted the dischargeability claim and any bankruptcy purpose in determining whether the underlying debt exists.[15] Plaintiff chose to dismiss his Bankruptcy Case. He did so knowing the posture of this adversary proceeding. If he mistakenly believed that dismissal would not affect this Court's exercise of jurisdiction over this adversary proceeding, the Court does not find that to be a reason supporting retention of jurisdiction. The Court finds it would be unfair, however, to require Defendants to continue litigating in bankruptcy court, with its attendant jurisdictional complications, what is essentially a claim objection when no case remains pending.

Further, the Court does not believe declining jurisdiction will prejudice Plaintiff in any significant way. With the exception of sanctions under Rule 3001, the Court discerns no reason Plaintiff could not pursue his remaining claims in a non-bankruptcy forum. There is no indication that a statute of limitations would preclude his claims elsewhere, and Plaintiff has not provided

---

*Thomas*), 592 B.R. 99 (Bankr. W.D. Va. 2018) (citing to *In re Goeller*, Case No. 12-17123-RGM, 2013 WL 3064594, at \*2 (Bankr. E.D. Va. June 19, 2013). The sanctions available under Rule 3001 are to "preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or (ii) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure." The record in the adversary proceeding shows that Defendants produced the document missing from the Proof of Claim, and Plaintiff is not entitled to attorney's fees as he is *pro se*. Plaintiff also incurred no filing fees by initiating this adversary proceeding, and Plaintiff's costs in connection with the adversary proceeding are likely minimal.

[15] While dismissal of the bankruptcy case mooted any inherently bankruptcy purpose related to the claim objection, because the objection goes to the existence of the debt itself, dismissal did not completely moot the controversy between the parties. They still have a live controversy regarding the existence of the debt, but resolution of that dispute in this Court serves no purpose related to the bankruptcy case or any apparent interest related to jurisdiction in this Court. Claim objections based on a unique aspect of the Bankruptcy Code that do not go to the merits of the underlying claim, such as a late-filed proof of claim, perhaps would be moot after case dismissal.

any reason that his claims could not be pursued outside of this Court. As to the Rule 3001 sanctions, the Court does not find the possibility of sanctions under Rule 3001 to be a sufficiently compelling reason to retain jurisdiction after voluntary dismissal of the Bankruptcy Case. The sanctions under Rule 3001 are limited in their scope, permissive, and, unlike claims under § 362(k), ample authority holds that Plaintiff is not entitled to a private right of action for a violation of Rule 3001. *See, e.g., In re Thomas, supra* n. 13. The only real prejudice to Debtor is the loss of an opportunity to convince this Court to use its discretion to award costs (but not attorney's fees) in bringing this adversary proceeding or to preclude use of the missing documents and information from the Proof of Claim in this proceeding.[16]

Plaintiff argues that his state law claims are all dependent on his alleged violations of Rule 3001 and therefore are all bankruptcy matters that should be resolved in this Court. The Court disagrees. Certainly, enforcing Rule 3001 for the purpose of resolving a claim objection is a bankruptcy matter which is properly handled in this Court. But this adversary proceeding no longer involves a claim objection, at least not in the sense that it resolves a claim against a bankruptcy estate. The Court has trouble discerning what underlying bankruptcy purpose is served by enforcing a procedural rule designed to aid in the process of resolving claims against a bankruptcy estate when there is no bankruptcy estate against which claims can be asserted.

In contrast, Plaintiff's ancillary state law claims that arise as a result of the alleged violations of Rule 3001 do not serve any inherent bankruptcy purpose. Just because the operative facts giving rise to a claim occurred in connection with a bankruptcy case does not mean that the

---

[16] Another minor prejudice would be that Defendants, hopefully, will not start any new litigation with two strikes against them by failing to timely answer the complaint and missing discovery deadlines. As discussed above, Defendants have not exactly handled this litigation in an exemplary manner up to now, but the Court would not be prepared to sanction Defendants at this juncture in the adversary proceeding based on the current motion for sanctions and record before it. The Court, if it were to retain jurisdiction, would be inclined, as it must, to resolve this adversary proceeding on the merits and not through procedural sanctions.

claims themselves serve some inherent bankruptcy purpose that must be decided by a bankruptcy court. Said another way, if a creditor violates Rule 3001 or some other rule of bankruptcy procedure or practice, and such violation can form the basis for an independent claim based on non-bankruptcy law, that is no more a "bankruptcy matter" than any claim held by a debtor and arising under non-bankruptcy law. If such claim exists at all, other courts that normally concern themselves with such non-bankruptcy claims can hear them. Of course, determination of whether a creditor violated Rule 3001 in the first place may normally be a bankruptcy matter, but confining that determination to the bankruptcy court is much more compelling when a bankruptcy case still exists and the claims allowance process serves a bankruptcy purpose. In any event, there is no doubt Defendants committed a technical violation of Rule 3001(c)(1) by failing to attach a copy of the loan documents to the Proof of Claim.[17] Whether that violation creates a claim under Plaintiff's state law theories need not be determined by this Court.

The Court does not read *In re Thomas*, relied upon by Plaintiff for the proposition that his state law claims are inherently bankruptcy matters, to be contrary to the Court's conclusion. In fact, the Court reads the case to support the Court's conclusion on this point. In that case, the debtor sued a creditor for FDCPA claims based on alleged violations of Rule 3001 and mistakes on the Proof of Claim (which read quite similar to Plaintiff's claims in this adversary proceeding). Debtor also sought sanctions, in the form of attorney's fees, for alleged violations of Rule 3001. In declining to send the case to arbitration, the court in *In re Thomas* found that whether a violation occurred under Rule 3001 and whether sanctions were appropriate was a bankruptcy matter. The court further refused to send the FDCPA claims to the arbitrator until it made a decision on whether

---

[17] Plaintiff's allegation that Defendants failed to attach an itemized statement of fees and interests to the Proof of Claim as required by Rule 3001(c)(2)(A) is far more doubtful. The Proof of Claim clearly attaches a statement showing fees and interest. Indeed, it attaches two such statements. Plaintiff's complaint is that the statement should have been more detailed. The Court has serious doubts about the viability of this claim.

a violation occurred.  The court, however, left open the possibility of sending the FDCPA claims
to arbitration after the court determined whether a violation of Rule 3001 occurred.  *Id.* at 112.  In
any event, *In re Thomas* is distinguishable from this adversary proceeding because the debtors
there had not voluntarily dismissed their bankruptcy cases.  The Court finds fairness and
convenience to the parties weighs in favor of declining jurisdiction.

> 3.  <u>Degree of Difficulty of the Related Legal Issues</u>

The final factor under *Morris* is the degree of difficulty of the related legal issues.  The
Court does not find this factor weighs in favor of retaining jurisdiction.  The most obvious
"bankruptcy issue" remaining in this adversary proceeding is whether a violation of Rule 3001
occurred.   The Court does not find this issue to be particularly difficult for another court to
determine (if necessary).  Defendant DOE also asserts as a threshold issue that it has not waived
sovereign immunity for purposes of the claims asserted against it under § 106. Admittedly, this
issue could create some difficulty for a non-bankruptcy court, but probably no more than the
difficulty it would create for a bankruptcy court.  The Court does not find this single issue to be so
difficult or important in this adversary proceeding to tip the scales in favor of retaining jurisdiction.

As the foregoing analysis shows, the Court finds the *Morris* factors weigh in favor of
declining jurisdiction in this adversary proceeding.

> **E.  Discretionary Abstention**

As already discussed, discretionary abstention is codified at 28 U.S.C. § 1334(c)(1), which
provides in relevant part that "nothing in this section prevents a district court in the interest of
justice, or in the interest of comity with State courts or respect for State law, from abstaining from
hearing a particular proceeding arising under title 11 or arising in or related to a case under title
11."  The statute clearly authorizes the Court to abstain in any core or non-core proceeding other

than a few exceptions not relevant here.  Plaintiff wholly fails to address whether discretionary

abstention is appropriate in this adversary proceeding.  For the reasons discussed below, and as an

alternative to the authority under *Morris* to decline jurisdiction, the Court will abstain from this

adversary proceeding.

Courts in this district generally refer to the following fourteen (14) factors to determine

whether discretionary abstention is appropriate:

1) the effect of abstention on the efficient administration of the bankruptcy estate;

2) the extent to which state law issues predominate over bankruptcy issues;

3) the difficulty or unsettled nature of the applicable law;

4) the presence of a related proceeding commenced in state court or other non-bankruptcy

court;

5) the basis of bankruptcy jurisdiction, if any, other than 28 U.S.C. § 1334;

6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

7) the substance rather than form of an asserted "core" proceeding;

8) the feasibility of severing state law claims from core bankruptcy matters to allow

judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden of the bankruptcy court's docket;

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves

forum shopping by one of the parties;

(11) the existence of a right to a jury trial;

(12) the presence in the proceeding of non-debtor parties;

(13) comity; and

(14) the possibility of prejudice to the other parties in the action.

*In re Flyboy Aviation Props., LLC*, Adv. No. 13-05111, 2013 WL 2317628 (Bankr. N.D. Ga. May 21, 2013).  "No one factor is controlling and courts have discretion to determine the relative weight afforded to each factor." *Id.*

Many of the *Flyboy* factors are not particularly relevant in this adversary proceeding, and the Court's analysis is very similar to the *Morris* analysis above.  The overriding factor in favor of abstention is the dismissal of the Bankruptcy Case and the fact that this adversary proceeding no longer has any effect on debtor's Bankruptcy Case or estate.  This fact implicates factors 1, 2, 5, 6, 7, and 9 and tips them all in favor of abstention.  Dismissal of the Bankruptcy Case turned a case asserting multiple core proceedings with ancillary state law claims into a case dominated by state law issues and virtually no bankruptcy issues remaining for adjudication.  On the other hand, factor 4 is the only factor that clearly tips in favor of retaining jurisdiction, but that factor is not so predominate to outweigh the other factors.  With the exception of sanctions under Rule 3001, the Court is aware of no reason that Plaintiff could not assert his remaining claims in another forum. The fact that he has not already does not preclude the Court's discretion to abstain from this adversary proceeding.

For the foregoing reasons, the Court declines to exercise jurisdiction over this adversary proceeding following dismissal of his underlying Bankruptcy Case.  Accordingly, it is

**ORDERED** that the Motions to Dismiss are hereby **GRANTED.**  The Amended Complaint and all pending matters in this adversary proceeding are hereby DISMISSED.

END OF DOCUMENT